**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| CARMEN M. MANZO-PEREIRA,<br><br>Petitioner,<br><br>v.<br><br>GARRETT J. RIPA, DAVID VENTURELLA,[1] MARKWAYNE MULLIN, and TODD BLANCHE, all in their official capacities,<br><br>Respondents. | **Civ. No. 26-1565 (GMM)** |

**OPINION AND ORDER**

Before the Court are two motions filed by Carmen M. Manzo-Pereira ("Petitioner" or "Ms. Manzo"): first, a *Writ of Habeas Corpus* (Docket No. 1); and second, *Petitioner's Renewed Emergency Motion for Temporary Restraining Order Preventing Transfer Outside the District of Puerto Rico (Filed in Compliance with Local Rule 65 and the Court's Order of August 31, 2026 [DKT. No. 5])* ("TRO") (Docket No. 6).

Pursuant to the reasoning below, this Court **GRANTS** the TRO and **HOLDS IN ABEYANCE** the *Writ of Habeas Corpus* as to the remaining

[1] Petitioner Todd Lyons is listed as Director of U.S. Immigration and Customs Enforcement ("ICE") in Petitioners' pleadings. (Docket Nos. 1-2, 6). Yet Todd Lyons is not the current director. Courts "may take judicial notice of facts which are capable of being determined by an assuredly accurate source." Does 1-6 v. Mills, 16 F.4th 20, 26 n.3 (1st Cir. 2021) (quotation marks omitted). Pursuant to Federal Rule of Civil Procedure 25(d), Acting Director of ICE David Venturella is automatically substituted as Respondent.

prayers for relief. This Court hereby **ORDERS** that the United States, its agencies, officers, employees, and all persons acting on their behalf shall not transfer Petitioner outside the District of Puerto Rico and that she be granted a bond hearing conducted by an Immigration Judge under the Department of Justice's Executive Office for Immigration Review ("EOIR").

## I. BACKGROUND

Ms. Manzo, a 26-year-old citizen of Venezuela, legally entered the United States on September 26, 2023. (Docket Nos. 1 at 1, 6; 1-4). Prior to her legal arrival, Ms. Manzo filed an Application for Asylum and for Withholding of Removal ("I-589 Form") on March 9, 2023. (Docket Nos. 1 at 5; 1-5).[2] This application is pending adjudication; Ms. Manzo is allowed to remain in the country until her asylum request is decided. (Docket No. 1 at 5; 1-5). On April 8, 2026, Ms. Manzo was issued an employment authorization card ("EAD") permitting her to lawfully work in the United States until October 7, 2027. (Docket No. 1-6). She pleads that her EAD has not been revoked and is still valid. (Docket No. 1 at 5).

---

2 The Court notes that the I-589 Form submitted contains the name "Michelle Manzo-Pereira," whereas the I-94 Form demonstrating lawful entry contains the name "Carmen M. Manzo-Pereira." (Docket Nos. 1-4, 1-5). Given the litany of other documents indicating Ms. Manzo's lawful entry and stay, the Court at this juncture takes as true without deciding that Ms. Manzo's plea - that she is an asylum seeker in her own right - is accurate.

In the interim, Ms. Manzo has lived and worked in the United States for nearly 3 years without any reported criminal history. (Docket No. 1 at 1, 5).

On August 25, 2026, Ms. Manzo was arrested by United States Immigration and Customs Enforcement ("ICE") agents during an enforcement operation. (Id. at 2, 5). Ms. Manzo was detained in General Services Administration ("GSA") Guaynabo Immigration Center, from where she filed her habeas petition. (Id. at 3).

As pled, the following federal officials (collectively, "Government") authorize Ms. Manzo's detention: Garrett J. Ripa, Miami Field Office Director for ICE, who oversees Puerto Rico's Immigration and Removal Operations conducted at the ICE Office in GSA Guaynabo Detention Facility; David Venturella, Acting Director for U.S. Immigration and Customs Enforcement; Markwayne Mullin, Secretary of the Department of Homeland Security; and Todd Blanche, United States Attorney General. (Id. at 4).

On August 30, 2026, Ms. Manzo filed the instant *Writ of Habeas Corpus*. (Id.). Ms. Manzo alleges her detention violates the Immigration and Nationality Act ("INA") and her procedural due process rights under the Fifth Amendment to the United States Constitution. (Id. at 6). Ms. Manzo asks this Court to prevent her transfer to a facility outside of Puerto Rico and order her to receive a custody redetermination hearing ("bond hearing"). (Id.

at 15).

To accompany Ms. Manzo's habeas petition, Ms. Manzo also filed a TRO. (Docket No. 6). There, Ms. Manzo reiterates her request for an immediate injunction prohibiting the Government from transferring her out of this Court's jurisdiction and reaffirms her request for a bond hearing while her habeas is reviewed. *See* (id.).

At this emergency juncture, the Court only addresses whether to issue a TRO.[3]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 65(b) controls this Court's analysis. TROs can be issued with or without notice to the adverse parties.[4] Fed. R. Civ. P. 65(b)(1); L.Cv.R. 56.

Courts have interpreted the standard for issuing a TRO "the same as [those] for a preliminary injunction." Servicios Legales de P.R., Inc. v. Union Independiente de Trabajadores de Servicios Legales, 376 F. Supp. 3d 163, 166 (D.P.R. 2019) (internal citation

---

[3] To the extent that this Court must review Petitioner's habeas petition – without deciding the merits of the habeas itself - to review Petitioner's prayer for a TRO, it has the jurisdiction to do so. *See* 28 U.S.C. § 2241(c)(3) (providing federal courts with jurisdiction to review habeas petitions filed by immigration detainees who assert that they are "in custody in violation of the Constitution or laws or treaties of the United States"). Nevertheless, this Court currently refrains from deciding the habeas. *See also* Aguilar v. U.S. Immigr. & Customs Enf't, 510 F.3d 1, 11 (1st Cir. 2007).

[4] Notice has been provided. *See* (Docket No. 3); Muñiz-Negrón v. Worthington Cylinder Corp., No. 17-CV-1985-RAM, 2021 WL 5313002, at *2 (D.P.R. Aug. 16, 2021) (considering electronic filings as sufficient notice).

omitted). To grant a TRO, a plaintiff must establish: (1) likelihood of success on the merits; (2) irreparable harm in the absence of immediate relief; (3) balance of equities favor relief; and (4) that relief is in the public interest. Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 8-9 (1st Cir. 2012). Petitioner bears the burden of meeting this test. Esso Standard Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006).

A TRO, like a preliminary injunction, is "an extraordinary and drastic remedy that is never awarded as of right." Peoples Fed. Sav. Bank, 672 F.3d at 8-9 (*quoting* Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011)).

TROs are granted within the district court's discretion. Sanchez v. Esso Standard Oil Co., 572 F.3d 1, 14 (1st Cir. 2009). A decision is reversible, therefore, for abuse of discretion. Planned Parenthood League of Mass. v. Bellotti, 641 F.2d 1006, 1009 (1st Cir. 1981).

## III. APPLICATION OF LAW

Ms. Manzo requests this Court issue a TRO to prevent her transfer and receive a bond hearing. After reviewing the factors, the Court finds that immediate relief is warranted.

### A. Likelihood of Success on the Merits

To assess whether Petitioner is likely to succeed on the merits, the Court must first determine under what legal basis Ms.

Manzo is detained.

The INA affords the Government the authority to detain certain noncitizens. Importantly, the INA differentiates between mandatory detention and discretionary detention. Only the latter provides a detainee with an entitlement to a bond hearing before an Immigration Judge. Two statutory provisions control this distinction: 8 U.S.C. §§ 1225 and 1226.

Section 1225 governs the detention of noncitizens who have not been "admitted" under the INA. As relevant here, Section 1225 provides for inspection of "[a]ll [noncitizens] . . . who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States." 8 U.S.C. § 1225(a)(3). An "applicant for admission" is defined as "[a noncitizen] present in the United States who has not been admitted or who arrives in the United States . . . ." Id. § 1225(a)(1). Notably, Section 1225(b)(2) establishes a mandatory detention scheme for noncitizens who are "applicant[s] for admission, if the examining immigration officer determines that a [noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] shall be detained for a proceeding under section 1229a [for full removal proceedings]." Id. § 1225(b)(2)(A). Detention under Section 1225(b)(2) is generally mandatory, and the statute does not provide for bond hearings. *See*

Jennings v. Rodriguez, 583 U.S. 281, 297 (2018).

Section 1226, by contrast, governs the "usual removal process" and affords noncitizens procedural protections not available in expedited removal proceedings. *See* Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 108 (2020). Under Section 1226, a noncitizen who is "arrested and detained" faces three potential outcomes: the Attorney General "may continue to detain the arrested [noncitizen]"; the Attorney General "may release the [noncitizen] on bond of at least $1,500"; or the Attorney General "may release the [noncitizen] on conditional parole." 8 U.S.C. § 1226(a). Section 1226(a) therefore establishes a discretionary detention framework for noncitizens. Guerrero Orellana v. Moniz, No. 25-2152, --- F.4th ----, ----, 2026 WL 2352042, at *1 (1st Cir. Aug. 13, 2026).

Where removal and detention of a noncitizen is discretionary, rather than mandatory, Section 1226(a) entitles a noncitizen to an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change. *See, e.g.* Rodriguez Diaz v. Garland, 53 F.4th 1189, 1202 (9th Cir. 2022); Hernandez-Lara v. Lyons, 10 F.4th 19, 27 (1st Cir. 2021) (holding that an Immigration Judge at an initial bond hearing held under Section 1226(a) must

consider whether (1) a noncitizen poses a danger to the community based on clear and convincing evidence, or (2) the noncitizen poses a flight risk based on a preponderance of the evidence).

Excepted from the general rule of discretionary detention under Section 1226(a) are noncitizens involved in specific enumerated criminal activities. 8 U.S.C. § 1226(c)(1). Under Section 1226(c), in accordance with the Laken Riley Act enacted in January 2025, the Government is required to detain certain noncitizens who fall within the statute's criminal categories.

1. Discretionary detention applies to Ms. Manzo

Petitioner entered the country legally on September 26, 2023. She has a documented I-94 Form and EAD indicating her lawful entry and pleads that she is an asylum seeker. (Docket Nos. 1; 1-4; 1-6). Ms. Manzo has since lived in the United States for nearly three years without any reported criminal record. (Docket No. 1 at 5). Notwithstanding, Ms. Manzo was arrested and detained by ICE officials on August 25, 2026. (Id. at 1).

Ms. Manzo's lawful entry into and longstanding residence in the United States before her detention strongly suggests that Section 1226(a), rather than Section 1225(b)(2), applies to her detention. Given that Section 1226(a) outlines detention for noncitizens who were "arrested and detained" while residing in the United States, interpreting Section 1225(b)(2) to apply to this

same category would render it and amendments under the Laken Riley Act superfluous. *See* Guerrero-Orrellana, 2026 WL 2352042, at *11-15 (outlining statutory interpretation of Section 1226(a) and Section 1225(b)(2) that demonstrates that an arrest and detention of noncitizens residing in the United States cannot fall under Section 1225(b)(2)(A)). Such an interpretation would also conflict with the INA's structural distinction between arriving applicants for admission and noncitizens already present in the United States and arrested within the country. Id. Nor, with the information that this Court has before it, does Ms. Manzo have any criminal record that would otherwise subject her to the mandatory detention exception outlined under Section 1226(c). (Docket No. 1 at 2); *see also* Hernandez-Lara, 10 F.4th at 26-27; Rodriguez-Diaz, 53 F.4th at 1196.

Thus, at this preliminary stage, based on the allegations currently before the Court, Petitioner has demonstrated a substantial likelihood of establishing that Section 1226(a)'s discretionary detention framework governs her detention.

Accordingly, for purposes of the present motion only, the Court concludes that Petitioner has demonstrated a substantial likelihood that Section 1226(a) governs her detention.

2. Petitioner is likely to succeed on the merits

Where removal and detention of a noncitizen is discretionary,

rather than mandatory, Section 1226(a) entitles a noncitizen to: an initial bond hearing before a neutral decisionmaker; the opportunity to be represented by counsel and to present evidence; the right to appeal; and the right to seek a new hearing when circumstances materially change. Rodriguez-Diaz, 53 F.4th at 1202; *see also* Doe v. Tompkins, 11 F.4th 1, 2 (1st Cir. 2021).

From the record before this Court, it appears that Petitioner did not receive a bond hearing. (Docket No. 1 at 6). However, the First Circuit has spoken clearly on the matter and has determined that individuals detained under Section 1226, like Ms. Manzo, are owed a bond hearing. *See* Guerrero-Orrellana, 2026 WL 2352042, at *11. To be sure, the First Circuit joins a majority of the courts of appeals in identifying this right to a bond hearing. *See, e.g.*, Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami, 175 F.4th 1258, 1285 (11th Cir. 2026); Barbosa da Cunha v. Freden, 175 F.4th 61, 95 (2d Cir. 2026); Lopez-Campos v. Raycraft, 175 F.4th 713, 734 (6th Cir. 2026); Rodriguez Vazquez v. Bostock, No. 25-6842, --- F.4th ----, ----, 2026 WL 2196424, at *15 (9th Cir. July 30, 2026); Cirrus Rojas v. Olson, No. 25-3127, --- F.4th ----, ----, 2026 WL 2198315, at *8 (7th Cir. July 30, 2026).

Under Guerrero-Orellana, this Court is bound by this reasoning. As such, Petitioner has demonstrated a substantial likelihood of success on the merits of her claim and is entitled

to a bond hearing.

B. Irreparable Harm

Next, irreparable harm. When evaluating the expedition of equitable relief, "[an] injunction should issue only where [it is] essential in order effectually to protect . . . rights against injuries otherwise irremediable." Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982) (*quoting* Cavanaugh v. Looney, 248 U.S. 453, 456 (1919)).

The "irremediable" injury would be threefold for Ms. Manzo: detention; removal from this Court's jurisdiction pending Ms. Manzo's habeas corpus proceedings;[5] and the imminent consequences that such removal would have on her person and her rights.

[5] Were Ms. Manzo to be transferred before the issuance of this *Opinion and Order*, this Court would still retain jurisdiction. Jurisdiction under 28 U.S.C. § 2241 is assessed at the time the petition is filed, and 28 U.S.C. § 1631 governs jurisdiction after transfer. *See* Rumsfeld v. Padilla, 542 U.S. 426, 441, 447 (2004). Petitioner was detained within this District when the Petition was filed on August 30, 2026. (Docket No. 1). That jurisdiction, once properly acquired, is not defeated by a respondent's subsequent transfer of the petitioner to another district. *See* Ex parte Endo, 323 U.S. 283, 304-05 (1944) (rejecting mootness after transfer where a respondent capable of effecting the petitioner's release remained subject to the court's jurisdiction); Rumsfeld, 542 U.S. at 441 (distinguishing Endo on the ground that there was no indication the transfer at issue was an attempt to manipulate jurisdiction). Transferring Petitioner before this *Opinion and Order* is issued implicates the concern recognized in Endo - that a post-filing transfer should not deprive a court of its ability to resolve a properly filed habeas petition. *See also* Ozturk v. Hyde, 136 F.4th 382, 387 (2nd Cir. 2025); Ozturk v. Trump, No. 25-CV-00374, 2025 WL 1318154 (D. Vt. Apr. 18, 2025) (retaining jurisdiction and ordering return of a habeas petitioner transferred out of the district where the petition was filed). Under these circumstances, the Court finds that it retains jurisdiction over the petition and over the individuals responsible for Petitioner's custody for purposes of preserving its jurisdiction and effectuating the relief previously ordered.

The harm posed in transfer without a bond hearing is substantial. Ms. Manzo faces a prolonged period of detention that would divest Ms. Manzo of her liberty, despite her lawful entrance and presence in the United States. Zadvydas v. Davis, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment . . . lies at the heart of the liberty that the [Fifth Amendment Due Process] Clause protects.").

Moreover, courts possess authority under the All Writs Act, 28 U.S.C. § 1651(a), to preserve their jurisdiction while a habeas petition remains pending. *See* Nken v. Holder, 556 U.S. 418, 426 (2009). Maintaining Petitioner within the District of Puerto Rico preserves the status quo and ensures that the Court may provide meaningful relief should the petition ultimately succeed.

C. Balance of Equities and Public Interest

The remaining preliminary injunction factors - the balance of equities and the public interest - "merge when the Government is the opposing party." Id. at 435.

The balance of equities favors Petitioner where she has demonstrated a substantial likelihood that the Government's interpretation of the detention statutes is unlikely to prevail and that continued detention without access to the procedures afforded under Section 1226(a) may be unlawful.

The Court recognizes the Government's substantial interest in

enforcing the immigration laws. At the same time, the public has a significant interest in ensuring that detention decisions are implemented in accordance with the statutory framework established by Congress and the procedural protections required by law. Neighborhood Ass'n of The Back Bay, Inc. v. Fed. Transit Admin., 407 F. Supp. 2d 323, 343 (D. Mass. 2005), aff'd, 463 F.3d 50 (1st Cir. 2006).

## IV. CONCLUSION

Based on the present record, Petitioner has demonstrated a likelihood of success on the merits, irreparable harm if interim relief is denied, and that the balance of equities and public interest favor preserving the status quo pending further proceedings. Accordingly, this Court **GRANTS** the TRO and **HOLDS IN ABEYANCE** the *Writ of Habeas Corpus* as to the remaining prayers for relief.

The Court **ORDERS** that Petitioner executes summons on Respondents on or by September 10, 2026.

The Court further **ORDERS** the United States, its agencies, officers, employees, and all persons acting on their behalf shall not transfer Petitioner outside the District of Puerto Rico.

The Court further **ORDERS** that Petitioner be granted a bond hearing before an Immigration Judge no later than September 8, 2026 at 5:00 P.M. The Government shall inform on or by September

9, 2026 at 5:00 P.M. whether such hearing has been held and its outcome. The Government must also file a pleading responsive to Petitioner's *Writ of Habeas Corpus* on or by September 15, 2026 at 5:00 P.M.

This *Opinion and Order* grants only temporary injunctive relief and does not adjudicate the merits of the *Writ of Habeas Corpus*.

This Court retains jurisdiction to enforce its decision.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on August 31, 2026.

/s/ Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE